UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **TIBERIO CLEMENTE-BARTOLO,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CASE NO. 1:20-cv-1239 |
| | ) |
| **MERCHANDISE WAREHOUSE CO., INC.,** | ) |
| | ) |
| | ) |
| **Defendant.** | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I.  NATURE OF THE CASE**

1. This is an employment discrimination action brought by Plaintiff Tiberio Clemente-Bartolo ("Clemente" and/or "Plaintiff"), against Defendant Merchandise Warehouse Co., Inc. ("Defendant" or "Warehouse"), for unlawfully discriminating and retaliating against him on the basis of his sex (male), and his race (Hispanic), in violation of Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, as amended; and disability, in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*, as amended, and violations of Indiana common law.

**II.  PARTIES**

2. Clemente is a citizen of the United States. At all time relevant to this lawsuit Clemente has resided within the geographic boundaries of the Southern District of Indiana.

3. Defendant Warehouse is a domestic, for-profit corporation. At all times relevant to this action, Warehouse has maintained facilities and conducted business within the geographic boundaries of the Southern District of Indiana.

4. The claims asserts against Defendants arose within the geographic boundaries of the Southern District of Indiana, and venue is proper in this Court.

### III. JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. §12117.

6. Warehouse is an "employer" as defined by the ADA, 42 U.S.C. § 12111(5)(A), as amended, and as defined by Title VII, 42 U.S.C. §2000e(b).

7. Clemente is an "employee" as defined by the ADA, 42 U.S.C. § 12111(4), and as defined by Title VII, 42 U.S.C. §2000e(f).

8. Clemente satisfied his obligation to exhaust administrative remedies, having timely filed EEOC Charge No. 470-2018-02185, alleging sex and disability discrimination and retaliation, and amending the charge on October 30, 2018, to include race discrimination, receiving the appropriate Notice of Right to Sue letter on March 21, 2020, and timely filing this action less than ninety days following of his receipt of that notice.

9. All events, transactions, and occurrences concerning this case have arisen in the geographical environs of the Southern District of Indiana, venue is proper in this Court.

### IV. FACTUAL ALLEGATIONS

10. Clemente is an Hispanic male who was hired by Warehouse as a "Temp-to-Hire" employee in August 2017.

11. Clemente became a full-time Warehouse employee on November 19, 2017, holding the position of forklift operator.

12. At all relevant times, Clemente suffered from a medical condition that caused him to experience multiple infections, surgeries, urinary incontinence, drainage and leakage.

13. In September 2017, Clemente was insulted by Lee Carroll ("Carroll"), Second Shift Lead (Caucasian/non-disabled), who used derogatory sexual and racial slurs while Clemente was using the restroom.

14. Clemente explained to Carroll that he had to use the restroom so often because of his medical condition.

15. Sometime in October 2017, Austin Maddox ("Maddox")(Caucasian/non-disabled), another Second Shift Lead, complained to Clemente that he was using the restroom too frequently.

16. Clemente informed Maddox of his medical condition, and explained that he had to use the restroom frequently to clean his wound.

17. Maddox informed Clemente he could only use the restroom during break times.

18. On November 19, 2017, Maddox suspended Clemente and sent him home for using the restroom outside of his scheduled breaks.

19. Clemente again explained to Maddox that his medical condition required Clemente to use the restroom frequently to clean his wound.

20. However Maddox repeatedly told Clemente he could not use the restroom outside of breaks.

21. Maddox told Clemente he would be suspended again if he used the restroom outside of scheduled break times, despite his medical condition.

22. In all, Maddox suspended Clemente on at least four occasions for using the restroom outside of scheduled break times.

23. On November 20, 2017, Clemente met with Second Shift Supervisor Stattone Geary ("Geary")(Caucasian/non-disabled), and HR Administrator Tyler Bowles ("Bowles")(Caucasian/non-disabled), to report Maddox's actions.

24. Clemente explained his medical condition to Geary and Bowles, and also requested a different uniform because the one he had originally been given caused Clemente to sweat excessively, and put Clemente at increased risk of infection.

25. During January and February 2018, coworkers Carlos Jones ("Jones")(Hispanic/non-disabled) and Cody Ballard ("Ballard")(Caucasian/non-disabled), repeatedly taunted Clemente with sexually-oriented jokes, and repeatedly called Clemente a "faggot."

26. Also in February, Ballard threatened to stab Clemente in the face with a pencil, while referring to Clemente as a "short little faggot."

27. On February 25, 2018, Jones used a bread stick to make sexual jokes toward Clemente and referred to him as a "fucking faggot."

28. Clemente reported these incidents to Geary on February 26, 2018.

29. On Monday, March 5, 2018, Clemente was forced to undergo surgery to treat his medical condition.

30. The following Wednesday, Clemente returned to work and coworker Michael Gutierrez ("Gutierrez")(Hispanic/non-disabled) repeatedly made sexually-oriented jokes and comments to Clemente.

31. Clemente met with Bowles on March 9, 2018, and filed a sexual harassment complaint against Jones and Ballard. Clemente also filed a complaint against Geary, because Geary had failed to investigate Clemente's complaint and take the appropriate action.

32. Two days later, Clemente used the restroom to clean and change the gauze dressing on his wound before his scheduled break time. Shortly after he returned to work, Maddox suspended Clemente because he allegedly "exceeded his 15-minute break."

33. Later that same day, Ballard also took a break that exceeded 15 minutes, but Ballard

was not suspended.

34. Clemente was suspended for exceeding his 15-minute breaks on a number of occasions, as were similarly situated employees who were not Hispanic, and/or Hispanic, and/or gay. Those similarly-situated employees, however, were not suspended, nor was any other disciplinary action taken against them.

35. On March 12, 2018, following Clemente's sexual harassment complaint, Jones, and an African American employee named Damon (L/N/U), were terminated. Ballard, however, was not terminated, and was not subjected to any other disciplinary action.

36. Clemente met with Bowles and Geary on Wednesday March 14, 2018, and filed a complaint against Maddox for race and disability discrimination.

37. Clemente also once again requested a lighter-weight uniform as an accommodation for his medical condition.

38. On March 26, 2018, Clemente submitted a doctor's letter indicating that Clemente should be allowed to use the restroom more frequently, and requesting that Clemente be provided a lighter-weight uniform to reduce his excessive sweating, and minimize the risk of infection.

39. On April 2, 2018, Clemente's supervisor followed Clemente into the restroom and pushed open the door as Clemente prepared to use the restroom.

40. On April 9, 2018, Clemente's supervisor told demeaning, sexually-oriented jokes in front of Clemente and other employees.

41. On April 17, 2018, Clemente's supervisor made a sexually-suggestive joke when Clemente sought the supervisor's assistance concerning a new product (boneless pork butts), stating that Clemente "loved butts."

42. On April 20, 2018, as result of excessive body sweating, Clemente's wound was

draining excessive pus, and became infected.  Three days later, Clemente was forced to undergo surgery to remove the infected area from his wound.

43. Sometime in mid-April and early-May, Clemente noticed several Caucasian co-workers were wearing newer suits, specifically the lighter-weight suits Clemente had previously requested as accommodation.

44. Once again, Clemente went to HR and requested a different suit, but was once again denied while many other, Caucasian, employees, were being given the newer suits.

45. Clemente, as well as the other Hispanic and African American employees were not provided the newer suits.

46. On May 9, 2018, Clemente requested a new suit once again, offering to pay for the suit himself.  Finally, on May 17, 2018, Clemente received the suit he had been requesting for several months.

47. On May 18, 2018, Clemente was denied his break while everyone else was sent to break.

48. On June 8, 2018, Clemente was told he could not go to his break until he finished his truck.  Everyone else was sent to break.

49. On June 18, 2018, Clemente was again told that he had to finish his truck before taking a break, while the other employees were sent to break, regardless of whether their assignments had been completed.

50. In June, 2018, Clemente was physically threatened after reporting a co-worker who had used alcohol and was still allowed to operate equipment.

51. On July 5, 2018, Second Shift Lead Nick Diaz (Hispanic/non-disabled) told a number of sexually-oriented, demeaning jokes in front of Clemente and other employees during their lunch

break.

52. On July 7, 2018, Carroll denied Clemente a break after Clemente had been working for three consecutive hours, despite the fact that Clemente needed a break to use the restroom and clean his wound.

53. After prolonged harassment and discrimination, Clemente was forced to resign from Warehouse.

54. Clemente's resignation was a constructive termination.

## V.  LEGAL ALLEGATIONS

### Count 1: Sex Discrimination in Violation of Title VII

55. Clemente incorporates the allegations in each of the foregoing paragraphs as though specifically set forth herein.

56. Warehouse subjected Clemente to terms and conditions of employment that were different and more harsh than those enjoyed by similarly-situated employees who were not homosexual.

57. Warehouse ultimately terminated Clemente's employment because of his sexual orientation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended.

58. Warehouse's actions were intentional, willful, and/or taken with reckless indifference to Clemente's rights as protected by Title VII.

59. Clemente suffered, and continues to suffer, harm as a result of Warehouse's unlawful acts.

### Count 2: Race/National Origin Discrimination in Violation of Title VII

60. Clemente incorporates the allegations in each of the foregoing paragraphs as though

specifically set forth herein.

61. Warehouse subjected Clemente to terms and conditions of employment that were different and more harsh than those enjoyed by similarly situated employees who were not Hispanic.

62. Warehouse ultimately terminated Clemente's employment because of his race and/or national. origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended.

63. Warehouse's actions were intentional, willful, and/or taken with reckless indifference to Clemente's rights as protected by Title VII.

64. Clemente suffered, and continues to suffer, harm as a result of Warehouse's unlawful acts.

### Count 3:  Hostile Work Environment in Violation of Title VII

65. Clemente incorporates the allegations in each of the foregoing paragraphs as though specifically set forth herein.

66. Warehouse violated Clemente's right to be free from discrimination as protected by Title VII by subjecting, and/or allowing Clemente to be subjected, to repeated acts of harassment because of his sexual orientation, race, and/or national origin, that created a hostile work environment, and by refusing to take action when Clementi reported it.

67. Warehouse's actions were intentional, willful, and/or taken with reckless indifference to Clemente's rights as protected by Title VII.

68. Clemente suffered, and continues to suffer, harm as a result of Warehouse's unlawful acts.

### Count 4: Disability Discrimination in Violation of the ADA

69. Clemente incorporates the allegations in each of the foregoing paragraphs as though

specifically set forth herein.

70. Clemente's medical condition is a disability as that term is defined by the Americans With Disabilities Act.

71. Warehouse refused to provide Clemente with a reasonable accommodation for his disability, and/or refused to engage in an interactive process to identify a reasonable accommodation.

72. Warehouse unlawfully discriminated against Clemente because of his disability, and/or because it regarded him as having a disability, and/or because he requested reasonable accommodations for his disability, by subjecting him to terms and conditions of employment that were less favorable than those enjoyed by similarly-situated employees who were not disabled, were not regarded as being disabled, and/or were did not request a reasonable accommodation for a disability.

73. Warehouse's actions violate the ADA, 42 U.S.C. §12101 *et. seq.*, as amended.

74. Warehouse's unlawful actions were willful, intentional, and/or taken with reckless disregard for Clemente's federally protected civil rights.

75. Clemente suffered, and has continued to suffer, harm as a result of Warehouse's unlawful actions.

### Count 5:  Hostile Work Environment in Violation of the ADA

76. Clemente incorporates the allegations in each of the foregoing paragraphs as though specifically set forth herein.

77. Warehouse violated Clemente's right to be free from discrimination because of his disability by subjecting, and/or allowing Clemente to be subjected, to repeated acts of harassment because of his disability, that created a hostile work environment, and by refusing to take action when Clementi reported it.

78. Warehouse's actions were intentional, willful, and/or taken with reckless indifference to Clemente's rights as protected by the ADA.

79. Clemente suffered, and continues to suffer, harm as a result of Warehouse's unlawful acts.

### Count 6: Retaliation

80. Clemente incorporates the allegations in each of the foregoing paragraphs as though specifically set forth herein.

81. When Clemente reported the harassment he experienced to Warehouse's management and Human Resources departments, he engaged in protected activity, as that term is defined in Title VII, and in the ADA.

82. Warehouse retaliated against Clemente because he engaged in protected activity by subjecting, and/or allowing Clemente to be subjected, to repeated acts of harassment, and by refusing to take action when Clementi reported it.

83. Warehouse's actions were intentional, willful, and/or taken with reckless indifference to Clemente's rights as protected by the Title VII and the ADA.

84. Clemente suffered, and continues to suffer, harm as a result of Warehouse's unlawful acts.

### VI. RELIEF

**WHEREFORE,** Plaintiff Tiberio Clemente-Bartolo, by counsel, respectfully prays that the Court find in his favor, and against the Defendant on all counts, and provide the following relief:

85. Order Warehouse immediately to reinstate Clementi to the position, and with the appropriate reasonable accommodations for his medical condition, he would have held, absent Warehouse's unlawful discrimination, or to pay front pay in lieu thereof;

86. Order Warehouse to pay Clemente's lost wages and benefits incurred as a result of its violation of his civil rights;

87. Order Warehouse to pay Clemente appropriate liquidated, compensatory and punitive damages for its violations of Title VII and the ADA;

88. Order Warehouse to pay Clemente pre- and post-judgment interest on all sums recoverable;

89. Order Warehouse to pay Clemente's reasonable attorney fees and costs;

90. Order Warehouse to provide Clemente with all other relief that is just and proper.

### VII.  DEMAND FOR TRIAL BY JURY

The Plaintiff, Tiberio Clemente-Bartolo, by counsel, requests a trial by jury on all issues so triable.

Respectfully submitted,

*s/ Jay Meisenhelder*
Jay Meisenhelder, Atty No. 19996-49
JAY MEISENHELDER EMPLOYMENT
& CIVIL RIGHTS LEGAL SERVICES, P.C.
650 North Girls School Road, Suite D40
Indianapolis, IN  46214
Office Telephone:     317/231-5193
Direct Telephone:     317/899-9220
Facsimile Number:  317/982-5463
Email Address:         jaym@ecrls.com